In the Matter of the Voluntary Dissolution of RATEAU SALES COMPANY.

THOMAS W. STEPHENS et al., Composing the Firm of T. W. STEPHENS & Co. et al., Appellants; LEONCE BATTU et al., Respondents.

Corporations — proceedings for a voluntary dissolution — dissolution should not be permitted pending an action to secure to the corporation the benefits of a contract alleged to have been forfeited by the officers who have instituted proceedings for the dissolution.

In proceedings for a voluntary dissolution upon the question whether it is "beneficial to the interests of the stockholders that a corporation should be dissolved" (Gen. Corp. Law, L. 1909, ch. 28; Cons. Laws, ch. 23, § 170), the interests of the minority stockholders, as well as those of the majority, are entitled to be considered.

The fact that stockholders had brought an action in equity to secure to the corporation the benefits of a contract which the petitioners had

assumed to allow to be forfeited, against its real interests, in which action, demurrers to the complaint were overruled, is a material circumstance bearing on the question whether a dissolution should be decreed. To dissolve the corporation, before that litigation has been determined on the merits, deprives the minority stockholders in advance of any redress therein.

It was error for the referee to refuse to receive evidence of the proceedings in such action, and of the facts alleged in the answer to the petition in this proceeding and upon which the contesting stockholders relied, as constituting reasons why the corporation should not be dissolved.

*Matter of Rateau Sales Co.*, 141 App. Div. 931, reversed.

(Argued March 13, 1911; decided April 4, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 23, 1910, which affirmed an order of Special Term dissolving the Rateau Sales Company (a business corporation) and appointing a receiver of its property.

The facts, so far as material, are stated in the opinion.

*Charles A. Brodek* for T. W. Stephens & Co., appellants. The complaint in the equity suit, the demurrer thereto of the Rateau Sales Company, and the decision of the court overruling the demurrer, should have been admitted in evidence, inasmuch as it formed a record of an admission by the Rateau Sales Company of all the allegations of the complaint, and such admission was proof of a complete defense to the petition for a dissolution. (*Cutler* v. *Wright*, 22 N. Y. 472; *Nat. Cont. Co.* v. *H. R. W. P. Co.*, 110 App. Div. 133; *Drew* v. *Longwell*, 81 Hun, 144.)

*Charles A. Wendell* and *Alfred W. Kiddle* for Signono C. Munoz, appellant. The appellant was not permitted at the hearing to offer his proper allegations and proof. (Code Civ. Pro. § 2426; *Jewett* v. *Swan*, 19 Wkly. Dig. 144.)

*Watson B. Robinson* and *Charles A. Frueauff* for respondents.

WILLARD BARTLETT, J. This is a proceeding for the voluntary dissolution of the Rateau Sales Company, instituted upon

the petition of a majority of the directors under sections 170 and 171 of the General Corporation Law. An answer was interposed in behalf of several minority stockholders, raising issues which were litigated to some extent before the referee to whom the matter was sent upon the return of the order to show cause prescribed in such cases. He reported in favor of dissolution and upon the confirmation of his report by the court the final order was made of which the appellants complain. I think it ought to be reversed, because the objecting stockholders were not given an opportunity by the referee to prove facts of which they were entitled to give evidence under their answer and which might have led the court to conclude that the corporation ought not to be dissolved.

The Rateau Sales Company had a contract with the Rateau Steam Regenerator Company which the appellants say was of great value to the sales company — so valuable indeed that if it be reckoned among the assets, the property of the sales company would suffice to pay all just demands and enable the corporation to carry on its business, at the same time affording ample security to those who might deal with it. This contract was not mentioned in the schedule attached to the petition for dissolution. The petitioning directors have treated it as having been rescinded or forfeited through the neglect or omission of the sales company itself. The appellants contend that this rescission is merely a false pretense and the outcome of a conspiracy to wreck the sales company and deprive the minority stockholders of their rights, as evidence of which they point to the significant fact that they themselves have paid into the treasury of the sales company the only cash which it ever received (to the amount of $18,750), and now, if this order stands, they get nothing.

To make the position of the parties clear it is necessary to state a little more in detail the terms and conditions of the contract.

It begins by reciting that the regenerator company owns certain specified patents for steam generators and complete engineering data for the manufacture and exploitation of

machinery thereunder and is desirous of entering into a contract for the sale of all apparatus used in equipping steam regenerator plants, while the sales company is desirous of forming a selling organization for the sale of such apparatus. To these ends, the regenerator company agrees to prepare the designs of steam regenerator plants at its own expense in a prompt and diligent manner and furnish to the sales company all necessary engineering data, drawings and specifications for use in the prosecution of its business, and also to furnish all necessary capital for the production of apparatus and auxiliary apparatus to be used in steam regenerator plants, and to sell steam regenerators and steam regenerator plants embodying the inventions covered by the patents exclusively to the sales company for a period of 15 years with the privilege of a renewal for 15 years more. In consideration of these undertakings on the part of the regenerator company, and the rights and privileges conveyed to it by the contract, the sales company agrees to pay to the regenerator company $199,500, which the regenerator company agrees to accept in 1,995 shares of the sales company's stock at par, to be issued to such nominees as the regenerator company may designate. T. W. Stephens & Co. are designated to receive 795 shares of such stock under this provision of the contract. The sales company further agrees that $25,000 shall be paid into the treasury of the sales company as follows: $6,250 on the execution of the contract and $6,250 each on April 1, July 1 and October 1, 1908. T. W. Stephens & Co. are to agree with the sales company to guarantee these payments in cash, and as the payments are made the 795 shares of sales company's stock issued to them are to be released to them absolutely. The contract further provides that in the event that these moneys are not paid into the treasury as scheduled, all obligation of the regenerator company to the sales company shall terminate *ipso facto*, and the rights which it granted to the sales company shall revert *ipso facto* to the regenerator company.

There is a subsidiary contract between the sales company and T. W. Stephens & Co. by which that firm guarantees the

cash payments aforesaid, and which provides that default in payment shall have the effect provided for in the principal agreement between the regenerator company and the sales company.

T. W. Stephens & Co. made all the payments except the last, thus paying $18,750 into the treasury of the sales company, which was all the cash it ever received. Mr. L. Battu was president of the regenerator company and also president of the sales company. Upon default in the last payment, the regenerator company, by L. Battu, president, notified the sales company in writing that the obligations of the regenerator company toward the sales company were thereby ended ; and the sales company, by L. Battu, president, also notified T. W. Stephens & Co. in writing that they had not made the last payment, and, therefore, the contract of the sales company with the regenerator company was " subject to a forfeit clause."

As a justification for their failure to pay the last installment of $6,250, T. W. Stephens & Co. allege that the regenerator company did not perform the terms, covenants and conditions of the contract on its part, in that it failed to prepare for the sales company the designs of steam generator plants at its own expense in a prompt and diligent manner, or any such designs whatsoever, and failed to furnish all or any engineering data, drawings or specifications for use in the business of the sales company, and also failed to furnish all necessary capital, or any capital, for the production of apparatus or auxiliary apparatus to be used in steam regenerator plants as the regenerator company agreed to do in the contract aforesaid. In their answer in this dissolution proceeding they further aver that the four directors of the sales company, in addition to the president Battu, are his mere nominees and representatives and under his personal control ; that he owns or controls a majority of the stock of the regenerator company ; and that the dissolution of the sales company which he is trying to bring about by insisting upon the pretended rescission or forfeiture of the contract between that corporation and the regenerator company will be beneficial only to the regenerator company and of the greatest

possible harm to the objectors and other minority stockholders of the sales company. They attach to their answer a copy of the complaint in an equity suit which they have brought in their own behalf and that of all other stockholders who may come in as plaintiffs against Battu and both corporations to obtain relief from the pretended rescission or forfeiture; and they charge that the dissolution proceedings are not brought in good faith, but constitute an effort on the part of the conspirators to circumvent this action in equity.

Upon the hearing before the referee the objectors offered in evidence the complaint in their equity suit, the demurrers of the several defendants thereto on the ground of insufficiency, and the decision of the Supreme Court at Special Term overruling the demurrers. All these papers were excluded upon the objection of the petitioners, and an exception was duly taken to the ruling. In making it, the learned referee not only held that the papers could not properly be received, but also declared that proof of the facts entitling the appellants to relief in the equity action was not admissible in the dissolution proceeding. The same facts are substantially set forth in the answer to the petition in this proceeding; so that this statement was an announcement of the referee's purpose to shut out the testimony of competent witnesses tending to prove the facts upon which the appellants relied as constituting reasons why the corporation should not be dissolved.

I think it was error to exclude the pleadings and decision in the equity suit. Of course, the complaint was not evidence of the facts alleged therein as an admission or otherwise; but all the papers taken together constituted legitimate evidence bearing upon the question whether it was "beneficial to the interests of the stockholders that the corporation should be dissolved." (Gen. Corp. Law, L. 1909, ch. 28; Cons. Laws, ch. 23, § 170.) Upon this question the interests of the minority stockholders, as well as those of the majority, are entitled to be considered. The minority stockholders were before the referee contending that the corporation still owned rights under a valuable contract which is worth so much

that if taken into consideration the corporation could not be deemed insolvent. The complaint, demurrers and decision in the equity suit showed *prima facie* the existence of a cause of action in their behalf to avoid the alleged rescission or forfeiture of their contract; and after a carefully considered determination by one justice of the Supreme Court sustaining the legal sufficiency of the claim of the minority stockholders in this respect, another justice of the Supreme Court might well hesitate to hold that the corporation should be dissolved before that litigation had been finally decided on the merits. But the referee shut out the evidence which would have disclosed this fact to the justice before whom his report came up for confirmation; and I think his error in so doing demands a reversal. The fact that the appellants in apparent good faith and thus far successfully had maintained an action to secure to the corporation the benefits of a contract which the petitioners had assumed to allow to be forfeited, against its real interests, was certainly a most material circumstance bearing on the question whether a dissolution should be decreed. To dissolve the corporation before that litigation has been determined on the merits, is practically to deprive the minority stockholders in advance of any redress therein. The fact that the equity suit was not actually commenced until after the beginning of the dissolution proceeding does not seem to be a sufficient reason for refusing to consider its pendency as bearing upon the question whether the corporation should be dissolved. The facts upon which it is based all occurred beforehand; and if it presented a substantial controversy as to the enforceability and value of a contract alleged to be a corporate asset, its pendency might well warrant the conclusion that a dissolution should not precede the final judgment therein.

In this view I advise a reversal of the order appealed from, with costs to appellants, and that the application be remitted to the Special Term for further proceedings.

CULLEN, Ch. J., VANN, WERNER, HISCOCK and CHASE, JJ., concur; HAIGHT, J., absent.

Order reversed, etc.